## DAY *v.* DULLAM.

FRAUDULENT CONVEYANCES—PARTNERSHIP—PRESUMPTIONS.

Where father and son entered into partnership in drug business under agreement that son was to run business, that each was to have one-half interest, and that on father's death son was to have entire business, and father, apparently in compliance with said agreement, although it did not mention real estate, afterward took title to real estate partly paid for out of proceeds of business in their joint names, with right of survivorship, on part of which building was erected and used in business, no presumption may be indulged in that title was so taken in fraud of father's creditors as indorser on notes of corporation, especially where business of corporation at time conveyances were made was very prosperous, and it cannot be said that services of son and wife, of which father had benefit until his death, and for which they received but meager compensation, were not fair consideration for property so received by son.

Appeal from Genesee; Covert (Frank L.), J., presiding. Submitted June 5, 1929. (Docket No. 65, Calendar No. 34,405.) Decided October 7, 1929.

Bill by Melzor C. Day, administrator of the estate of Frank Dullam, deceased, against Arthur P. Dullam, to set aside certain deeds of conveyance on the ground of fraud. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Neithercut & Neithercut,* for plaintiff.

*Charles A. Withey* and *Roy E. Brownell,* for defendant.

SHARPE, J. Frank Dullam died on June 15, 1918, intestate. The plaintiff was appointed administra-

tor of his estate on July 11, 1918. The date set for the hearing of claims was March 11, 1919. No claim was at that time presented by Homer A. Day. On August 22, 1922, he filed a petition in the probate court, setting up the nature of his claim against the estate and the reasons why it had not been before presented, and prayed that the commission on claims be revived and the claim heard. An order was entered pursuant thereto and the claim allowed at $27,462.20. The administrator paid $11,951.26 thereon.

The administrator thereafter filed a bill of complaint to recover certain property claimed to have been conveyed to the defendant in fraud of creditors. The decree dismissing this bill was affirmed by this court. *Day* v. *Dullam*, 235 Mich. 516. A new petition for hearing on claims was then filed, and, after a hearing before the commissioners, on appeal to the circuit court the claim was allowed at the sum of $20,477.39. There are no assets in the hands of the administrator to pay it. He thereupon filed the bill of complaint herein, praying that certain deeds of conveyance from the deceased to his son, the defendant, be set aside and the defendant ordered to release his title and interest therein to plaintiff and for an accounting of the rents and profits and use of the property since such conveyances were made.

In 1907, the Quaker Marble Company was organized under the laws of the State of Tennessee. Homer A. Day and L. G. Goodenough and the deceased were interested therein as stockholders. In November and December, 1911, and in January and February, 1912, these three men became indorsers on the notes of this company to a bank in Flint in the sum of $24,500. Goodenough soon after died, and Day and Dullam continued as indorsers on re-

newals of these notes until Dullam's death in 1918. The claim presented and allowed was for Dullam's share of this indebtedness.

It may be here noted that the indorsed notes and renewals thereof were also secured by bonds of the marble company to the amount of $25,000, to secure the payment of which a mortgage had been executed to the bank upon its property in Tennessee. It also appears that the marble company is being operated, some sales having been made since the death of Frank Dullam, and that the deceased owned 40 shares of the stock in this company of the par value of $100 each at the time he died. This stock has not been sold. A stipulation appears in the record under which it was agreed that the fact that such bonds had not been sold should in no manner affect the proceedings taken by plaintiff herein.

In 1907, the deceased and his son, Arthur, the defendant herein, entered into a partnership agreement for the carrying on of a drug business then owned by the father in the city of Flint. On August 20, 1910, this agreement was reduced to writing. It reads as follows:

"This agreement of copartnership and bill of sale made and consummated between the undersigned parties which is as follows: 1st, I, Frank Dullam, of the City of Flint, Genesee county, State of Michigan, upwards of two years ago entered into a copartnership with my only son, Arthur P. Dullam, to carry on the drug business in which I was then engaged at No. 321 S. Saginaw street, Flint, Michigan, and where said business has since been conducted by said copartnership, each party owning one-half interest in said business and each paying one-half of all expenses for conducting the same.

"It is further understood and agreed as a part of the consideration for the making of this instrument

said Arthur P. Dullam shall devote all of his time for the best interest of said firm which is now known and is to be hereafter known as Dullam & Son.

"It is further understood and agreed that in consideration of the above terms and conditions that in case of the death of said Frank Dullam, his son, Arthur P. Dullam, shall become the sole owner of the entire drug business carried on by said firm including books of account and everything used in connection with the firm business.

"It is also understood and agreed that books shall be kept as heretofore giving a full history of the business transaction of said firm, said books to be open at all times for the inspection of either partner or their attorneys.

"It is further agreed that in case that Arthur P. Dullam shall become the sole owner of said business now situated as above stated or any other place to which said business may be carried on he shall as a part consideration of making this agreement assume all debts outstanding against said firm."

This agreement was faithfully performed on the part of the son. He worked long hours, for which he drew meager compensation. His wife also worked in the store. The business was conducted in a building, owned by the deceased, on Saginaw street in the city of Flint, until November, 1915. In January, 1915, two pieces of property on Lapeer street were purchased, the title running to Frank Dullam and Arthur P. Dullam, "with right of survivorship," and a store building erected thereon. This building cost $10,235, of which $9,000 was contributed by the deceased out of the proceeds of the Saginaw street property; $1,500 was borrowed to pay for the land. This was paid by the defendant, presumably out of the business. An additional parcel was later purchased. The purchase price was

secured by a mortgage, which defendant paid out of the proceeds of the business. The title to this was taken in the names of deceased and his son, "not as tenants in common but as joint tenants."

Neither the oral agreement between the deceased and the defendant, entered into in 1907, nor the agreement by which it was reduced to writing in 1910, can be successfully assailed as a fraud upon the creditors of the deceased. At neither of these times was there any liability on the part of the deceased to Homer A. Day as an indorser or otherwise. We are not here concerned with the personal estate referred to in this agreement, as plaintiff makes no claim thereto in the prayer for relief in his bill of complaint.

The serious question is whether this agreement was intended to and did include the real estate in which the business was conducted, and a part at least of the proceeds of which went into the Lapeer street property. The proofs satisfy us that the defendant so understood it, and we feel constrained to hold that such was the intention of the deceased. That the deceased was anxious that the defendant, his only child, should engage in business and devote his time thereto is apparent, and, as an inducement for such action on the son's part, he agreed that the son should have a one-half interest in the business. While he did not at that time deed to him a one-half interest in the real estate on which the building in which the business conducted was located, he did, in apparent compliance with his understanding of the contract, take the deed for the Lapeer street property, on which the new building was constructed, in the name of himself and the defendant, with right of survivorship. While at

that time he was an indorser on the notes of the marble company, the business of that company was then very prosperous. He also owned other property, and devoted his attention largely to business matters outside the partnership. No presumption of fraudulent intent in doing so can be indulged in, nor do we think such action on his part can be deemed fraudulent as a matter of fact or of law as against the rights of Homer A. Day by reason of his indorsements.

As before stated, the defendant had worked faithfully and for a very inadequate consideration in the service of the partnership from 1907 until these conveyances were made in 1915 and 1917. His wife also worked in the store, receiving little compensation therefor. If it be said that the agreement of 1910 did not include the real estate and building in which the business was conducted, we cannot say upon this record that the services rendered by the defendant and his wife, of which the deceased received the benefit, were not a fair consideration for the property received by the defendant under the conveyances.

In reaching this conclusion, we are doubtless somewhat influenced by the delay of Homer A. Day in asserting his rights. The conveyances above referred to were all recorded soon after they were executed. The liability of the deceased on the notes was existing at the time of his death. No effort was made to enforce it for several years thereafter. In the meantime the defendant has treated the property as his own. He has paid off a mortgage on a part of this property, made improvements thereon, and handled it in such a way as would render it very difficult, if not impossible, to make a fair accounting of his father's interest therein.

The decree dismissing the bill is affirmed, with costs to defendant.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred. The late Justice FELLOWS took no part in this decision.